## PHILLIPS v. BUCKLEY et ux.

No. 4232.   Decided Feb. 5, 1926.   (243 P. 796.)

1. CHATTEL MORTGAGES—FORECLOSING MORTGAGEE HELD UNDER EVIDENCE, NOT TO HAVE TAKEN POSSESSION OF SHEEP MORTGAGED, SO AS TO BE LIABLE TO MORTGAGOR FOR MISMANAGEMENT. In action to foreclose mortgage on sheep, where defendants interposed counterclaim alleging plaintiff had taken possession as mortgagee and mismanaged sheep to defendant's damage, finding that possession of sheep was in mortgagor's during time of controversy, and that plaintiff, at mortgagor's request and approval, merely advised and assisted mortgagors in managing and disposing of the sheep, was sustained by the evidence.

2. PARTNERSHIP—MORTGAGORS OF SHEEP, UNDISPUTEDLY COPARTNER'S HELD BOTH BOUND BY ONE PARTNER'S CONSENT TO AND APPROVAL OF MORTGAGEE'S ACTS IN ASSISTING IN MANAGEMENT AND DISPOSITION OF SHEEP. Where mortgagors of sheep were undisputedly copartners, both partners were bound by the act of one partner in consenting to and approving of mortgagee's acts in assisting in the management and disposition of the sheep.

Appeal from District Court, Second District, Morgan County; *George S. Barker,* Judge.

Action by H. J. Phillips against J. W. Buckley and others, with counterclaims by defendants Buckley. From a decree in favor of plaintiff and dismissing their counterclaims, defendants Buckley appeal.

AFFIRMED.

*Walton, Walton & Nelson* and *J. C. Wood,* all of Salt Lake City, for appellants.

*Morgan, Coleman & Straw,* of Provo, for respondent.

Corpus Juris-Cyc. References.

[1, 2]   Chattel Mortgages 11 C. J. p. 725 n. 45:   Partnership 30 Cyc. p. 497 n. 43 New.

CHERRY, J.

This action was commenced August 4, 1922, by plaintiff against J. W. Buckley and his wife, Sylvia Buckley, Fred Weyland and his wife, Inez Weyland, and others as defendants, to foreclose a real estate mortgage, certain pledges, and a chattel mortgage upon a band of sheep, all executed by the defendants above named and delivered to the plaintiff to secure the payment of a note for $50,000, which became due October 1, 1921.

Weyland and wife made no defense to the action, but suffered default to be taken against them. Buckley and wife defended the action and interposed certain counterclaims. No question was raised concerning the execution of the note and securities sued upon, but the dispute related exclusively to the possession, management, and disposition of the sheep described in the chattel mortgage. The defense and counterclaims asserted by the defendants Buckley and wife were based upon their allegation that the plaintiff, on or about July 15, 1921, took possession of the mortgaged sheep for the purpose of foreclosing his mortgage; that he delayed foreclosure, and so mismanaged and dealt with the mortgaged sheep, and disposed of part of them, as to diminish and depreciate their number and value, etc., to the great loss and damage of the mortgagors, which damages were specificially pleaded in the counterclaims.

The plaintiff denied taking possession of the sheep, but alleged that at the request of the defendants, and because of their inability to do so, he advanced funds to provide feed and care for the mortgaged sheep, and advised with the defendants concerning the management and control of the same, and the disposition and sale of the wool produced and such portions of the sheep as were marketable; that he deferred foreclosure at defendant's request, and upon their promise to pay his debt; that defendants remained in possession of the sheep, and consented and acquiesced in all acts of control, management, and disposition of the property mortgaged.

A trial was had before the court, resulting in a judgment and decree in favor of the plaintiff, and dismissing the counterclaims. The defendants J. W. Buckley and Sylvia Buckley have appealed.

Many errors are assigned and argued, but the decisive question in the case is whether or not the plaintiff took and had possession of the mortgaged sheep during the period in controversy. If the finding of the trial court to the effect that the plaintiff did not take and have such possession, but that he merely advised with, and aided and assisted, the mortgagors in the management, control, and disposition of the sheep, and that all acts of plaintiff were at the request of defendants and with their approval and consent, and that the defendants remained in possession of the mortgaged property, is sustained, the contentions made by appellants become untenable, and the appeal fails. All the claims made by appellants are predicated upon the theory that plaintiff took the mortgaged sheep.

The record is voluminous. Many details of evidence must be here omitted. There are minor conflicts, but the salient facts are substantially undisputed.

The defendants J. W. Buckley and Fred Weyland were copartners engaged in the sheep and wool-growing business under the firm name of Buckley and Weyland. In 1919 they purchased a herd of sheep from the plaintiff. Plaintiff also lent them a considerable sum of money. At the time of sale and for a year or more thereafter the sheep were ranged in Utah near the Wyoming line. In the fall of the year 1920 it was decided to remove the sheep to Uinta county, Wyo. They were so removed, and the note and mortgage sued upon were executed on November 23, 1920. There was an arrangement between Buckley and Weyland that Weyland should personally have charge of and actually herd the sheep, for which he was to be paid $75 per month from the partnership. Buckley had no personal direction or custody of the sheep, but was engaged elsewhere in his own private affairs. In the summer of 1921 the mortgagors became involved in financial straits. They were unable to pay the interest due July 1, 1921, on plaintiff's note. They had no sufficient money or

credit with which to pay the necessary expenses of maintaining the sheep. The range conditions in Wyoming were not suitable and the sheep were not "doing well." The plaintiff, who resided at Provo, Utah, was appealed to by both Buckley and Weyland for advances of money to preserve and maintain the sheep. The plaintiff made a trip to Wyoming and conferred with the mortgagors. A significant feature of the transaction is that at this time the plaintiff made no demand for possession and no threat of foreclosure. The request to to him was for advances to enable the mortgagors to preserve the sheep until they could negotiate a loan or obtain funds from other sources, which Buckley represented that he would and could do. The plaintiff agreed to make the necessary advances. At his request the partnership employed one Daybell, an experienced sheepherder and a relative of plaintiff to assist in herding the sheep. Weyland continued to have personal charge of the sheep at all times. The plaintiff from this time advanced the necessary expenses, and advised and consulted with Weyland with respect to the management, movements, and disposition of the sheep. The sheep were removed back to Utah and ranged in the summer season on lands belonging to the mortgagors and in the winter season on what is called the "desert range" in Tooele County, Utah. At the usual and appropriate times the sheep were bred and sheared and moved from one range to another, and sales were made from time to time of wool, lambs, and old ewes. All sales were made with the joint approval of Weyland and the plaintiff, and the proceeds retained by the plaintiff for reimbursement for the advances made for expenses, and the remainder applied on the mortgage debt. During this time Buckley was informed and knew of the situation. On several occassions he visited the camp and examined the sheep and made no objection whatever to the way they were being managed. He was constantly endeavoring to borrow money in order to satisfy the plaintiff's mortgage and retain the sheep, and was negotiating with banks and loan companies and with the plaintiff to that end up to just prior to the commencement of this action. The plaintiff was repeatedly requested by both Buckley and Weyland not to foreclose

the mortgage, and the promise was held out that they would and could arrange for the payment of plaintiff's debt, if given time. At no time was Weyland excluded from his actual control and physical possession of the sheep. It is clear that all of the interested parties understood and intended that this method of handling the sheep was for the sole purpose of affording the mortgagors further time in which to arrange for the payment of the plaintiff's note and to retain the mortgaged sheep, or as expressed by Buckley in a letter written November 1, 1921, proposing a plan of settlement:

"It gives Fred and I a good chance to stay in the business and work it out."

Weyland, writing from the winter camp to Buckley on November 11, 1921, said:

"Write you a few lines to let you know where we are. Been looking for you out every day. I branded the sheep yesterday and also mouthed up. I don't see a chance. There is nine or ten hundred old ewes no teeth at all. We can't make good on sheep that old. We just as well quit now as later. I know that I can't make them pay out. I am going to quit. If you still have a chance to get the money and want to keep them, alright, but leave me out," etc.

Notwithstanding this letter, Weyland remained in charge of the sheep until after the commencement of this action to foreclose the mortgage. During the spring and summer of 1922 Buckley repeatedly requested the plaintiff to defer action on his note and mortgage, stating that he had negotiations pending to secure money to pay the note, and shortly before the commencement of this action he made a proposal to plaintiff to furnish other security in lieu of the chattel mortgage and requested that action be deferred.

We have no hesitation in arriving at the conclusion that the trial court correctly found the fact of possession of the sheep to be in the mortgagors during the time in controversy. It was admitted that Buckley and Weyland were copartners, and it was undisputed that Weyland consented to and approved of every movement of the sheep and every act concerning their management and disposition, of which defend-

ant Buckley and wife made complaint after being sued. That both partners were bound by the acts of Weyland is indisputable.

The contention that the partnership between Buckley and Weyland was dissolved, because the entire partnership assets were taken possession of by plaintiff, fails for **1, 2** reasons above stated; and the claim that the plaintiff and Weyland entered into a conspiracy to deprive Buckley of any voice in the control and management of the sheep is a mere assertion unsupported by any evidence.

The counterclaims were all based upon the proposition that the plaintiff had possession of the mortgaged property, as mortgagee, and related to alleged mismanagement in the shearing and breeding of the sheep, and to sales of wool, lambs, and old sheep. Upon the merits of these claims, it is doubtful if any act of the plaintiff, except delay in foreclosing, could give rise to any just complaint upon the part of the defendants; but, since the plaintiff did not take or have possession of the sheep, and every act complained of had the approval and consent of Weyland, and some of them the approval and consent of Buckley, it is unnecessary to consider them further.

The advances made by the plaintiff were all accurately proved. The conduct and management of the sheep were shown to have been in good faith and according to usual practices, and the sales such as are usual and necessary in that kind of business. The sales were all fairly made and the proceeds accounted for.

We think the record amply supports the findings and decree of the trial court.

Judgment affirmed.

GIDEON, C. J. and THURMAN, FRICK, and STRAUP, JJ., concur.